# United States Court of Appeals
## For the First Circuit

No. 15-1193
No. 15-1597

TIMOTHY W. HILL, on behalf of himself and all others similarly situated; PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI; UNION ASSET MANAGEMENT HOLDING AG; PENSION FUND GROUP,

Plaintiffs, Appellees,

v.

STATE STREET CORPORATION; GOLDMAN, SACHS & CO.; MORGAN STANLEY & CO, INC.; CREDIT SUISSE SECURITIES (USA), LLP; LEHMAN BROTHERS INC.; UBS SECURITIES, INC.; KENNETT F. BURNES; PETER COYM; NADER F. DAREHSHORI; AMELIA C. FAWCETT; DAVID P. GRUBER; LINDA A. HILL; CHARLES R. LAMANTIA; MAUREEN J. MISKOVIC; RICHARD P. SERGEL; RONALD L. SKATES; GREGORY L. SUMME; ROBERT E. WEISSMAN; RONALD E. LOGUE; EDWARD J. RESCH; PAMELA D. GORMLEY; ERNST & YOUNG, LLP,

Defendants, Appellees,

CHARLES F. FRANZ; NITA W. FRANZ,

Interested Parties, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Thompson, Lipez, and Kayatta,
Circuit Judges.

John C. Browne, Bernstein Litowitz Berger & Grossman LLP, William H. Narwold, and Motley Rice LLC on brief for lead plaintiffs-appellees Public Employees' Retirement System of Mississippi and Union Asset Management Holding AG.

Christopher T. Cain and Scott & Cain on brief for interested parties Charles F. Franz and Nita W. Franz.

---

July 24, 2015

---

**KAYATTA, Circuit Judge.** This appeal arises out of the settlement of a securities class action brought on behalf of all who purchased the common stock of State Street Corporation during a period of just over three years. In settling the case, the lead plaintiff and plaintiff's counsel agreed with defendants that some class members would be deemed uninjured, and that others who were injured in amounts less than $10.00 would be paid nothing. They justified this sacrifice of the claims of small investors as reducing transaction costs in the interests of "the class as a whole," meaning in fact the interests of those class members with larger claims, class counsel, and defendants.[1]

The lead plaintiffs began distributing notice of the settlement (including the allocation plan, the right to opt out, and the right to object) on August 18, 2014, by mailing notice packets to over 7,000 potential class members and the nominee owners who held potential members' stock in street name. The notice plan was implemented in a manner that ensured that all large investors got ample notice of their right to opt out, and their

---

[1] Suppose a settlement is predicated on a twenty percent risk that defendants lose at trial. A class member with a harm of $1 million should get $200,000, and 10,000 class members each with a $40 harm should get $8. Assume further that it costs at least $5 to send a check to each class member. By setting a $10 "minimum allocation," the deal frees up $130,000 to be argued over by the remaining parties while still delivering to defendants releases covering what would be a liability of $450,000 in judgment and costs should the case have been tried to a verdict in favor of the class.

right to object. For many small investors, though, there were foreseeable delays in forwarding the notices from the nominee owners to the investors.[2] On September 4, 2014, the district court pushed back the final settlement hearing from October 27 to November 20. Nevertheless, the notices thereafter distributed continued to publish an objection deadline of October 6 and a hearing date of October 27. As a result, lead plaintiffs' counsel did not send individual notices directly to many small investors until a few days before, and in many cases after, the published deadline for opting out and for objecting.

Par for the course, virtually no one (even those who may have actually opened, read, and understood the notices) objected to the settlement. See generally Am. Law Inst., Principles of the Law: Aggregate Litigation § 3.05 cmt. a (2010) (hereinafter "ALI Principles") ("[A] settlement may raise serious fairness issues, but the amounts involved per class member may be so small that no class member has a sufficient incentive to object."). Surprisingly, the only ones who both objected and appealed the rejection of the objection raise no complaint about the substance of the settlement, including either the allocation formula or the

---

[2] Almost all securities that most investors purchase through brokerage companies are held in the name of the companies. See U.S. Securities & Exchange Commission, Fact Answers: Street Name (Oct. 5, 2005), http://www.sec.gov/answers/street.htm (last visited July 16, 2015).

minimum allocation threshold, each of which has the effect of causing many class members to release their claims in return for no consideration of any type. Instead, the objectors who appeal voice only two complaints: (1) they were given too little time to register objections with the district court; and (2) the district court should not have approved the amount of attorneys' fees awarded to class counsel.

The district court rejected these objections in full. It was also sympathetic to the argument of the lead plaintiffs that any appeal would increase the costs of plaintiffs' counsel (who have received $10.2 million plus interest as part of the settlement) and postpone distribution of the proceeds to the class members. Citing our 1987 decision in Sckolnick v. Harlow, 820 F.2d 13 (1st Cir. 1987), the district court used Federal Rule of Appellate Procedure 7 to bar objectors from appealing unless they posted a bond in the amount of $75,300. To justify this order, the district court determined that any appeal from its rulings on the objections would be frivolous, and the bond amount would ensure there would be funds available to pay plaintiffs' counsel for their fees defending the frivolous appeal.

In Sckolnick, before allowing the bond requirement to stand, our court also conducted a "preliminary examination of the merits," concluding that "we cannot say that the district court abused its discretion in judging [the appeal] to be frivolous."

-5-

_Id._ at 15. Such a preliminary review is crucial in protecting against the possibility that a district court could effectively immunize its decisions from review by declaring any appeal frivolous. Cf. Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 961 (9th Cir. 2007) ("[T]he question of whether, or how, to deter frivolous appeals is best left to the courts of appeals . . . . Allowing district courts to impose high Rule 7 bonds . . . risks impermissibly encumber[ing] appellants' right to appeal and effectively preempt[ing] this court's prerogative to make its own frivolousness determination." (second and third alterations in original) (citation and internal quotation marks omitted)). Here, a preliminary review left us less comfortable with any pre-judgment that the appeal would be frivolous. We therefore stayed the order to post a bond, but also stayed appellees' need to file any opposition to the appeal, and considered on an expedited basis whether to summarily dismiss the appeal on the merits under First Circuit Local Rule 27.0(c).

Having now fully reviewed objectors' brief on the merits of their appeal, we find that the district court was well within its discretion in rejecting the objections that are now pressed on this appeal. As far as the time given objectors to object, it does seem that the delivery of a notice on or around October 4 informing objectors that they had until October 6 to object was likely unreasonable. This was not a mailing gone awry. Rather,

plaintiffs knowingly mailed notices with the wrong objection deadline to at least half of the class members, justifying the decision as a cost-saving move. As for plaintiffs' argument that small investors, most of whom necessarily hold stock in street name, assume the risk of late notice, it is not clear why such a routine and known practicality of investing common to small investors should mean that those investors get late or no notice. It was apparently feasible to send the notice directly to them once names and addresses were obtained from the investment intermediaries.

In this case, though, we need not decide whether the notice was defective. Rather, the district court remedied any defect (as far as it concerned objectors) by delaying the hearing and allowing objectors to make their objections notwithstanding the published deadline.[3] Objectors received written notice on or around October 4, and they filed their objections in writing on

---

[3] Any harm caused by the erroneous dates in the mailed notice may have been mitigated to some extent by the fact that plaintiffs established a publicly available website detailing the settlement information on August 18, 2014. See https://www.statestreetclassactionsettlement.com (last visited July 16, 2015). The mailed notice provided the website address and stated that "any related orders entered by the Court will be posted on the website." The website's homepage currently contains the correct hearing date. Plaintiffs claim in their brief that the hearing date was updated on the website after the district court's rescheduling order. However, the complete settlement notice document that is available on the website still contains the October 6 and 27 dates for the objection deadline and hearing, respectively. Id. (follow "Important Documents" hyperlink).

November 4.  The district court then held its rescheduled approval hearing on November 20 to consider all objections on the merits. The district court even gave objectors' counsel the right to appear at the approval hearing by telephone.  Thus, we find that the objectors here had notice in fact and a sufficient opportunity to have any of their objections heard by the court before it approved the settlement.

That leaves objectors' complaint about the attorneys' fee award.  Plaintiffs point out that class counsel secured from defendants an agreement "not to take a position on any such application for an award of attorneys' fees and/or Litigation Expenses."  Objectors reason, not implausibly, that defendants must have thought that they received something for gagging themselves in this manner.  On the other hand, it is hard to see why defendants would have cared very much how the money they paid was divided.  In any event, again we need not decide the merits of this objection.  Because objectors take nothing at all under the allocation formula, and because they do not appeal that formula, no decrease in the portion of the $60 million settlement amount that is paid to counsel will in any way benefit objectors. This is another way of saying that they have no standing to complain about the fee award.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of

relief sought."); cf. Silverman v. Motorola Solutions, Inc., 739 F.3d 956, 957 (7th Cir. 2013) (concluding that an objector who did not file a claim "lack[ed] any interest in the amount of fees, since he would not receive a penny from the fund even if counsel's take should be reduced to zero"); Knisley v. Network Assocs., Inc., 312 F.3d 1123, 1126 (9th Cir. 2002) ("[W]here a class member refuses to participate in the settlement and appeals only the fee award, . . . . [t]he court must closely scrutinize the terms of the settlement agreement to determine whether modifying the fee award would actually benefit the objecting class member. If not, the appeal would not redress his injuries, and he would lack standing to proceed.").[4]

We therefore summarily dismiss pursuant to Local Rule 27.0(c) objectors' appeal from the court orders approving the settlement and the award of counsel fees. We also dismiss as moot objectors' appeal from the stayed order that they post a bond as a condition of proceeding further with the merits appeal.

Finally, while we award costs to appellees for both the bond appeal and the merits appeal as is customary pursuant to

---

[4] Objectors claim that class counsel failed to adequately protect the interests of the class members who received late notice. But in relying on, in effect, objectors' lack of individual standing, we note that they did not ask to be certified as representatives of other similarly situated class members who received the belated notice, and those thousands of other class members voiced no objection to the timing of the notice or the fee award.

Federal Rule of Appellate Procedure 39(a), we decline to award any further sanctions. The manner in which plaintiffs' counsel knowingly sent to a large block of class members notices containing stale deadlines, and the need plaintiffs apparently felt to muzzle any possible opposition to the fee request by defendants, created subjects for at least some inquiry, especially in a case in which class counsel traded releases for nothing at all on behalf of many class members. And the basis on which we reject the challenge to the attorneys' fee award was not even relied upon by the district court.

Thus, although we easily conclude, for the reasons already stated, that objectors' arguments with respect to the notice and fee rulings lack merit, we decline to impose a sanction against objectors' counsel for filing a frivolous appeal. See ALI Principles § 3.08 cmt. c (2010) (in considering awards of costs and fees for improper objections to a class settlement, "the court should err on the side of not ordering such awards unless the abusive conduct is clear"). We employ instead our summary dismissal procedure to end the appeal much more quickly without full briefing by plaintiffs, or argument.[5]

_____

[5] We note that the settlement funds were deposited into an escrow account and invested in United States Treasury bills before the district court issued final approval of the settlement, with all earned interest reinvested into the account. Any harm to the class members caused by the delay in releasing the account funds--even as condensed by the expedited nature of our disposition--

-10-

These appeals are <u>dismissed</u>.

---

has therefore likely been mitigated to some extent by the interest earned on the escrow account during the delay.